IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROSAURA BUILDING CORP.,

Plaintiff,

v.                                        CIVIL NO. 11-1559 (CVR)

MUNICIPALITY OF MAYAGUEZ, et als.,

Defendants.

## OPINION AND ORDER

## INTRODUCTION

Plaintiff Rosaura Building Corporation filed a Complaint against defendants for mandatory injunction and compensatory damages for alleged political discrimination under the First, Fifth and Fourteenth Amendments of the United States Constitution, the Constitution of the Commonwealth of Puerto Rico, Sections 1, 4, 6 and 7 of Article II and federal civil rights laws Title 42, United States Code, Sections 1983, 1988. (Docket No. 1). Plaintiff submits defendants, the mayor of the city of Mayaguez, Puerto Rico, José Guillermo Rodríguez (hereafter "Mayor Rodríguez"), and the Municipality of Mayaguez discriminated because of political reasons in not approving a lease contract of a real estate property owned by plaintiff in violation of its First and Fourteenth Amendments, for defendants were affiliated with the Popular Democratic Party (hereafter "PDP") and plaintiff was affiliated with opposing political beliefs within the same PDP party. The Complaint refers the action was directed to all named defendants in their official and personal capacity. (*Id.*, ¶¶ 20 and 23).

As per the allegations of the Complaint, co-defendant Mayor Rodríguez ordered that no contract be given to any person or corporation identified with those who dared to challenge him. Plaintiff Rosaura Building Corp's shareholders were not only active in the political faction that challenged said co-defendant but some of the relatives of a shareholder were members of the Municipal Legislature which had also challenged Mayor Rodríguez through an administrative forum and legal actions that were well publicized and of common knowledge in the city of Mayaguez. (*Id.*, ¶24).[1] After the lease contract of plaintiff's real estate property was not signed, one of its shareholders Néstor Pagán-Vélez (hereafter "Pagán-Vélez") questioned co-defendant Rodríguez who responded he will never feed those of his own political party who had betrayed him and knew about the relatives of Pagán-Vélez actions. (*Id.*, ¶27).[2]

On August 26, 2011, the co-defendants already served appeared through counsel and filed a Motion to Dismiss, which was granted in part and denied in part by the then presiding District Judge. (Docket Nos. 13 and 14). On August 29, 2011, the Court denied dismissal as to Mayor Rodríguez and dismissed as to the Municipality given that the

---

[1] Specific reference is made as to Néstor Pagán-Vélez' brother and niece, Víctor Pagán-Vélez and Mignonia Acosta-Pagán, who had been members of the Municipal Legislature prior to the 2008 elections.

[2] The record shows plaintiff had two summons issued on June 15 and June 22, 2011, respectively, as to: the City of Mayaguez, through its Mayor, José Guillermo Rodriguez and to José Guillermo Rodríguez, Mayor of the city of Mayaguez (Docket Nos. 4 and 5). The record also shows only one of the summons was returned executed on July 19, 2011, insofar as José Guillermo Rodríguez, Mayor of the City of Mayaguez. (Docket No. 6).

Complaint failed to plead a scintilla of facts that would lead to municipal liability as per

Monell.[3] (Docket No. 14).

On September 22, 2011, co-defendant Mayor Rodríguez, in his official capacity,

answered the Complaint. (Docket No. 17). Said co-defendant in the same capacity granted

his consent to proceed before a United States Magistrate Judge on September 8, 2011

together with his Initial Scheduling Memorandum. (Docket No. 23, Attachment 1). On

September 21, 2011, plaintiff Rosaura Building Corp. submitted its consent upon filing of

the Joint Initial Scheduling Memorandum. (Docket No. 24, Attachment 1).

On March 15, 2013, the co-defendants filed Motion Requesting Entry of Judgment

requesting judgment to be entered since no specific allegation as to co-defendant Rodríguez

appears in the Complaint as being sued in his personal capacity and in addition he had not

been served personally being only served as Mayor of the City of Mayaguez. (Docket No.

52). Additionally, the motion submits a government official such as Rodríguez can only be

sued for damages in his personal capacity, and in his official capacity only injunctive relief

is proper. The claims as to the Municipality of Mayaguez had already been dismissed for

which the only claims that remained were those for Mayor Rodríguez, in his official

capacity. Judgment was requested by defendants dismissing all claims. (Docket No. 52).

Plaintiff did not file an opposition to the Motion Requesting Judgment.[4] Defendants also

---

[3]  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018 (1978) (although local government are persons within Section 1983, these could not be held liable under respondeat superior theory but only when the alleged constitutional violation arises from a governmental custom or official policy).

[4]  On April 1, 2013, the Court denied, without prejudice, the Motion for Judgment so as to entertain also the Motion for Summary Judgment filed on same date which was pending plaintiff's opposition.  (Docket No. 60).

filed on even date a Motion for Summary Judgment. (Docket No. 53). Plaintiff requested

extensions of time to file its Opposition to the Motion for Summary Judgment. (Docket No.

58 and 60). On April 17, 2013, the response was filed. (Docket No. 63).[5]

Defendants' motion for summary judgment argues the Complaint has failed to state

a claim against the Municipality and the Mayor in his official capacity, upon which relief can

be granted, but since documents outside the pleadings were submitted, the Court should

consider the motion as one under summary judgment.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed.R.Civ.P. 56(c).

Pursuant to the language of the applicable rule, as amended in 2010, the moving

party bears the two-fold burden of showing that there is "no genuinely disputed" factual

predicate. Said party may also show that the materials cited do not establish the absence

or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." *See* <u>Vega-Rodríguez v. Puerto Rico Tel. Co.</u>, 110 F.3d 174, 178

(1st Cir. 1997). After the moving party has satisfied this burden, the onus shifts to the

resisting party to show that there still exists "a trial worthy issue as to some material fact."

---

[5] Plaintiff filed a motion for leave to file documents in the Spanish language and requested an extension of time to file the proper translations. The extension of time was granted. (Docket Nos. 64 and 65). Due to the proximity of the jury trial, the exhibits were considered by the undersigned in the Spanish language in order not to delay the issuance of this Opinion and Order. However, plaintiff is to comply with the timely filing of the translations for appeal purposes.

Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id*. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id*.

At all times during consideration of a motion for summary judgment, Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

The moving party's uncontested facts and other evidentiary facts of record on an uncontested motion for summary judgment must still show that said party would be entitled to summary judgment. *See* Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 4 (1st Cir. 2003).

## UNCONTESTED ISSUES OF FACTS

**A. Defendants' Uncontested Facts.**

Plaintiff is a family owned corporation with principal place of business in Mayaguez, Puerto Rico, and the owner of a real estate property at 107 Post Street South, Mayaguez, Puerto Rico, with a building. (Docket No. 53-1, Deft's Uncontested ¶¶ 1-4). Municipality of Mayaguez' personnel from the Head Start Program inspected the property during the Summer of 2010 to determine if it was suitable as additional classrooms, finding it suitable. The personnel informed the contracting officer of the Head Start, who commenced to gather information to present the petition for the drafting of the contract. Upon completion of the petition, it was sent to the Legal Division for final approval before the drafting of the contract. (*Id.*, ¶¶ 5-9). The Legal Division Contracting Officer returned the petition with several matters to be corrected, including the Mayor's prior approval of the lease contract. Except for the Mayor's approval, other deficiencies were corrected. On June 14, 2010, the Mayor notified the Head Start he did not approve the lease agreement. The preparation of the contract was never resent to the Legal Division for approval and drafting. Rosaura Building Corp. never entered into a lease agreement with the municipality of Mayaguez or its Head Start Program. (*Id.*, ¶¶ 10-14).

Mayor Rodríguez was only served with process in his official capacity. (Docket No. 53-1, Deft's Uncontested ¶15; Docket No. 6, Summons).

**B.    Plaintiff's Uncontested Facts.**

Plaintiff admitted to above defendant's uncontested facts ¶¶ 1-6, 9-10, and 13 and clarified the person who informed as the suitability of the building and the one who

gathered all necessary information and documentation for completion of the lease contract. (Docket No. 63-1, Plaintiff's Uncontested ¶ 7-8). It submits there were no deficiencies to be corrected at the time the contract petition was submitted to the Legal Division. (*Id.*, ¶ 11).

Plaintiff submits that, in regards with the prior approval of the Mayor, this was the first time the Head Start personnel was advised of the existence of such procedure and requirement. (*Id.*, ¶ 11). Plaintiff admits the lease agreement was never signed but qualifies this was due to discriminatory acts of Mayor Rodríguez. (*Id.*, ¶¶ 12 and 14).

Plaintiff submits the Mayor was sued in both his official and personal capacity, making reference to the Complaint, Docket No. 1 ¶¶ 4 and 21. The caption of said summons which reads "José Guillermo Rodríguez Mayor of the City of Mayaguez" was served on Atty. Efraín De Jesús, on behalf of "José Guillermo Rodríguez Mayor of the City of Mayaguez" as per Docket No. 6. There was no indication that it was only intended to be served in his official capacity. (Docket No. 63-1, Plaintiff's Uncontested ¶ 15).

In addition to above statements addressing defendant's uncontested facts, plaintiff submits its own statement of uncontested facts as follows:

Plaintiff refers that Elba I. Falto Pérez de Román (hereafter "Falto") was the Director of the Municipality's Head Start Program when the contract preparation between plaintiff Rosaura Building Corp. and the Municipality of Mayaguez was initiated. The Municipality was seeking to lease or rent an area to locate three centers of the Head Start Program which were needed before classes were to start on August 2010. (Docket No. 63-1, Plaintiff's Uncontested; Exhibit 2, Ana Martínez-Olmeda's depo., p. 9; Falto's depo., Exhibit 1, pp. 9-

12). Giovanny Pérez, Maintenance Supervisor, and Osvaldo Crespo, were in charge of the search and visited some three or four facilities and recommended Rosaura Building Corp's property which was in compliance with all requirements and most accessible. Other personnel of the Head Start Program evaluated the property and recommended it be the one used for the Head Start Center. (Docket No. 63-1, Exhibit 1, pp. 13, 14, and 16).

The Program's Sub-Director contacted plaintiff to begin contract preparations. Plaintiff was represented by Néstor Pagán-Vélez (hereafter "Pagán-Vélez") and his wife, Yolanda García-Ramasá (hereafter "García-Ramasá"), who met with Falto to begin the process. Pagán-Vélez and García-Ramasá came to an agreement with Falto, Director of the Head Start Program on the terms of the contract. (*Id.*, pp. 16-18).

Falto referred Pagán-Vélez and García-Ramassá to Ana Martínez-Olmeda (hereafter "Martínez-Olmeda") who was to inform them of the documents needed to submit in order to formalize the "Contract Petition." (*Id.*, pp. 18-19). All required documents were submitted to prepare the contract. (*Id.*, Exhibit 1, p. 25; Exhibit 2, p. 15). Martínez-Olmeda referred the "Contract Petition" to Laura Rivera, Head Start Program Finance Unit, Carmen Danisa Feliciano and María de los Angeles Rivera, in the Finance Department of the Municipality who certified funds were available for the contract. (*Id.*, Exhibit 1, pp. 20, 23-24; Exhibit 2, pp. 10-15).

Martínez-Olmeda thereafter referred the matter to the Contracts Committee of the Municipality which recommended the "Contract Petition" be approved. (*Id.*, Exhibit 1, pp. 21, 24-25). If by May 27, 2010, all was completed, Martínez-Olmeda would communicate with the contractor to let him know everything was "ready" for the contract. (*Id.*, Exhibit

1, pp. 25-26).[6]  Martínez-Olmeda submitted the Contract Petition to the Municipality's

Legal Division which notified Martínez-Olmeda there was a problem with the contract and

they could not go through with the same.  (*Id.*, Exhibit 1, pp. 27-28; Exhibit 2, pp. 21-22).

Falto was surprised by the denial for the property was the one which complied with the

Head Start Program's requirements, was the best received and the classrooms had to be

open in August 2010.  (*Id.*, Exhibit 1, p. 28).

By June 7, 2010, Falto received a letter from Mayor Rodríguez stating that, per the

Municipality's policy, all Program contracts had to have his approval.  (*Id.*, p. 29).  Program

contracts never had to previously receive the Mayor's approval.  (*Id.*, Exhibit 1, p. 29;

Exhibit 2, p. 26).   Falto acknowledged by letter of June 11, 2010 Mayor Rodríguez letter

stating that she would refer the contract petition for his approval.  (*Id.*, Exhibit 1, pp. 30-

31).[7]  She never spoke with the Mayor.  On June 17, 2010, Falto's letter was returned with

a signed note from the Mayor dated June 14, 2010 that read "[t]hat lease does not proceed."

(*Id.*, pp. 32-33).   Falto, accompanied by the Program's Sub-director, met with plaintiff's

representatives to let them know their contract petition could not proceed because the

Mayor did not approve it.  (*Id.*, pp. 36-37).

The children who were to be placed on the classrooms were placed in provisional

centers that were property of one Mr. Tamayo, owner of the leased property where the Head

---

[6] Exhibit 1, pp. 24-25 refers to what would have happened if the contract would have been approved by the Legal Division and the deponent, Falto stated she did not know there was an  issue with the approval until Martínez-Olmeda informed her what she was told in that the lease contract would not be approved.

[7] From plaintiff's own submission it is also uncontested that there was no contract issued but rather a Contract Petition with documentation.

Start offices are located, a political supporter of the Mayor, which facilities were not deemed adequate for they lacked a patio for recreation and a kitchen area. The contract for these provisional centers was not submitted for approval of the Mayor for the Mayor's brother and President of the Municipality Contracts Committee told Martínez-Olmeda it did not have to be submitted. (*Id.*, Exhibit 1, pp. 34-35, 38-39, and 44-46).

Shortly thereafter, at the closing ceremonies of the Central and Caribbean Games held in Mayaguez in 2010, Pagán-Vélez saw Mayor Rodríguez and asked him about the reason for not approving the contract. The Mayor told him he did not sign contracts with enemies, alluding to the brother and niece who were members of the Municipal Legislature prior to the 2008 elections. These relatives of Pagán-Vélez had political or institutional conflict with the Mayor that led to the filing of an administrative complaint for their removal and administrative and judicial cases. (Docket No. 63-1, Exhibit 3, Pagán-Vélez' depo., pp. 4-5; Exhibit 4, Pagán-Sosa's depo., p. 9; Exhibit 5, Mayor Rodríguez' depo., pp. 6-9).

Falto received a call from the Mayor after the above encounter asking what she had told about the reasons for the contract not going through. Falto told the Mayor she informed plaintiff's representatives the contract could not proceed because the Mayor did not approve it. (Exhibit 1, pp. 47-48). The Mayor was furious with Falto and told her she had to be loyal to him and not to plaintiff who was his political enemy. The Mayor also told her that plaintiff had sued him and questioned if she would serve as a witness for plaintiff.

She said she was not aware of the complaint but she would tell the truth if she was summoned. The Mayor stated she was not being loyal to him and that "women like her could not work in his administration." (*Id.*, Exhibit 1, pp. 47-48, and 51).

## LEGAL ANALYSIS

### A.  Motion to Enter Judgment as to co-defendant Municipality.

This Magistrate Judge denied without prejudice defendants' Motion for Judgment. (Docket No. 60). Upon examination of the record, it is deemed proper that judgment be entered at this time as to the Municipality of Mayaguez for the Complaint was dismissed back in August 26, 2011 for failure to plead a scintilla of facts that would lead to municipal liability under Monell and no opposition or objection thereto was filed as to the Motion to Dismiss nor as to the previous dismissal granted by the Court. Having already transpired some twenty months since the Court entered an order granting dismissal, plaintiff now requests in April 17, 2013, the Court should set aside such dismissal as not warranted and regard the Mayor's official acts as of the municipality. (Docket No. 63, pp. 9-10).

At no time during those twenty months, regarding failure to plead a scintilla of facts as to municipal liability, plaintiff sought request to amend the Complaint or even thereafter made such a request for the delay submitting good cause. No excuse has been offered by plaintiff for such delay and, even at this stage, the argument submitted is that such a dismissal was not warranted without additional evidence to substantiate the averment the municipality can be attributed with such a custom or policy as to the discrimination alleged.

Thus, this Magistrate Judge considers appropriate to grant the request for entry of judgment as to the Municipality of Mayaguez dismissing the claims consonant with the Court's previous order.

As such, the Motion for Judgment is granted in part and denied in part. It is granted as to the Municipality of Mayaguez and denied as to Mayor Rodríguez in his official capacity. (Docket No. 52).

## B. Claims as to co-defendant Rodríguez in his Individual Capacity.

Insofar as the remaining co-defendant Mayor Rodríguez, the record is clear he was sued and served with process as Mayor of the Municipality of Mayaguez in his official capacity. (Docket No. 6). Plaintiff never sought to amend the Complaint and, regardless of the numerous appearances of said co-defendant in his official capacity before this Court, attempted to clarify the record or to timely serve summons as to said co-defendant in his personal capacity.[8] Plaintiff's response in opposition to summary judgment that it should

---

[8]  On August 26, 2011, defendant Municipality of Mayaguez and co-defendant José Guillermo Rodríguez, its Mayor, in his official capacity, filed a Motion to Dismiss. (Docket No. 13). On August 31, 2011, Appearance of Counsel was filed for the Municipal Government of Mayaguez and José Guillermo Rodríguez, as Mayor of the City of Mayaguez. (Docket No. 15). Having the Court already granted dismissal as to the Municipality of Mayaguez, on September 22, 2011, the Answer to the Complaint was filed by defendant, Hon. José Guillermo Rodríguez, in his official capacity as Mayor of the Municipality of Mayaguez. (Docket No. 17). On November 18, 2011, defendant's Initial Scheduling Memorandum was filed on behalf of  defendant, Hon. José Guillermo Rodríguez, in his official capacity as Mayor of the Municipality of Mayaguez. (Docket No. 23). On November 21, 2011, the Joint Initial Scheduling Conference Memorandum was filed by Hon. José Guillermo Rodríguez, in his official capacity as Mayor of the Municipality of Mayaguez and plaintiff Rosaura Building Corp. (Docket No. 24). On November 23, 2011, an Informative Motion was filed by defendant Hon. José Guillermo Rodríguez in his official capacity. (Docket No. 27). On April 27, 2012, attorneys sought to withdraw from representing defendant Hon. José Guillermo Rodríguez in his official capacity. (Docket No. 33). On May 16, 2012, new counsel filed Notice of Appearance for Hon. José Guillermo Rodríguez in his official capacity as Mayor. (Docket No. 35). A Second Motion to Withdraw as Attorneys was filed as to Hon. José Guillermo Rodríguez in his official capacity. (Docket No. 38). Likewise, on May 23, 2012 a Second Motion to Withdraw as Attorneys was filed  as to  Hon. José Guillermo Rodríguez in his official capacity. (Docket No. 39). On July 10, 2012, a Motion Requesting Final Extension of Discovery Period was filed by Hon. José Guillermo Rodríguez in his official capacity. (Docket No. 42). Finally, on March 6, 2013, a Motion for Brief Extension of Time was filed by José Guillermo Rodríguez in his official capacity as Mayor to file dispositive motions. (Docket No. 50).

be considered Mayor Rodríguez was sued and served in both his personal and official capacities is belied by the record. Plaintiff posits the service of process effected through Atty. Efraín de Jesús on behalf of "José Guillermo Rodríguez Mayor of the City of Mayaguez" afforded the Mayor reasonable notification of the claims level against him in both personal and official capacities. (Docket No. 63, p. 12).[9] This Court does not agree with plaintiff's submission in law nor as substantiated by the record of this case.

A defendant must be served in accordance with rule to secure personal jurisdiction over him and simply naming the person in the caption of a complaint is insufficient to subject defendant to the jurisdiction of the court. The Federal Rules of Civil Procedure do not specifically provide for methods of service, for which state statutory provision are considered. Still under Rule 4(e)(2)(A-C) service to an individual is to be served personally or by leaving copies of the corresponding summons and complaint at the individual's dwelling house or usual place of abode with some person of suitable age and discretion therein residing or delivering copies of both to an agent authorized by appointment or by law to receive service of process. As an alternative method of service Rule 4(e) (1) provides that an individual can also be served "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."

---

[9] A perusal of the Complaint provides defendants as the city of Mayaguez, a political organization with judicial personality that can be sued on its own and José Guillermo Rodríguez as mayor of the city of Mayaguez in his official capacity and as President of the PDP. (Docket No. 1, ¶ 20). Thereafter it states the present action is directed to all named defendants, in their official capacity and in their personal capacity as individuals. (*Id.*, ¶21).

Rule 4 provides for a summons to be signed by the Clerk and to bear the court's seal. In the present case, no summons was requested nor issued by the Clerk of Court to defendant José Guillermo Rodríguez in his personal capacity. In the present case, only one summons was requested and, thus, issued as to José Guillermo Rodríguez as Mayor of the City of Mayaguez. (Docket No. 5).[10] A summons or a copy of a summons that is addressed to multiple defendants must be issued for each defendant to be served.

As to service of a foreign, state or local government, a state, a municipal corporation or any other state-created governmental organization that is subject to suit must be served by: (a) delivering copy of the summons and of the complaint to its chief executive officer; or (b) serving a copy of each in the manner prescribed by that state's law for serving summons or like process on such a defendant. Fed.R.Civ.P. 4(j)(2)(A-B). *See* Echevarría-González v. González-Chapel, 849 F.2d 24 (1st Cir. 1988).[11]

The Court deemed essential that the officer receives service of process as an individual for he/she is the one bound by a judgment and who can be held in contempt for disobeying a court order. Caisse v. DuBois, 346 F.3d 213 (1st Cir. 2003).

In the instant case, the Mayor of the City of Mayaguez Rodríguez in his official capacity was served through the assigned in the Municipality to serve the chief executive officer, that is, Atty. Efraín de Jesús, which is the only summons that appears as executed and which was filed in record. (Docket No. 6).

---

[10] Summons were also requested and issued as to the Municipal Government of Mayaguez, entitled The City of Mayaguez, through its Mayor, José Guillermo Rodríguez. (Docket No. 4).

[11] In Puerto Rico's jurisdiction which has specific provisions for the means of service upon public officers, the use of the state statute is the preferable means of effecting service. Gónzalez v. González-Chapel, 849 F.3d at 30 n. 5.

Considering the record of the case and the relevant legal provisions there is no proper service as to individual José Guillermo Rodríguez nor any submission by co-defendant José Guillermo Rodríguez in his personal capacity to the jurisdiction of this Court for a Section 1983 or pendent state law to be claimed. Richard J. Link, J.D., *Efforts of plaintiff or plaintiff's agent for service of process as constituting or supporting finding of "good cause", under Rule 4(j) of the Federal Rules of Civil Procedure, for failure to timely serve process upon defendant*, 111 ALR Fed. 503, Sec. 3[a] (1993).

When a municipal corporation is sued in federal court in the state of its creation, service can be made either on the chief executive officer or on the person designated by the law of that state to receive service of process on behalf of municipal corporations or comparable governmental entity. However, if the suit is against a governmental officer as an individual, rather than as an official, then service of the papers on the chief executive officer of the governmental entity will be insufficient to confer jurisdiction over that individual, who must be served as would any other individual defendant. Wright, Miller, Kane & Marcus, *Service on States, Municipal Corporations, and Other Governmental Organizations*, 4B Fed. Prac. & Proc. Civ. §1109 (3d ed., 2013).

In summary, co-defendant José Guillermo Rodríguez was never served with proper process as to any claims in his personal capacity. As such, claims against Mayor Rodríguez in his personal capacity are dismissed with prejudice.

## C. Claims as to co-defendant Rodríguez in his Official Capacity.

We now address the claims as to Mayor Rodríguez in his official capacity.

Payment for damages as retroactive awards from official capacity officers requires funds be paid from state treasury for which official capacity should allowed only for prospective injunctive or declaratory relief. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908). Insofar as official capacity and/or municipalities, however, mayors in Puerto Rico are the government officials ultimately responsible for employment and contract decisions for which reason their actions ipso facto constitute the official policy of the municipality. Acevedo-García v. Monroig, 351 F.3d 547 (1st Cir. 2003).

Having acquired jurisdiction upon proper service as to Mayor Rodríguez in his official capacity, the claim made by plaintiff would have survived the initial dismissal as stated by the Court in the order of August 26, 2011.

Still, plaintiff Rosaura Building Corp. has claimed its rights were violated when co-defendant Mayor Rodríguez did not approve or grant the lease agreement in regards with the real estate property of plaintiff and seeks the Court to order such a contract to be signed as well as prospective injunctive relief to avoid any detrimental act as to such decision. Co-defendant Rodríguez argues in his summary judgment request the Complaint be dismissed for failure to state a claim. Plaintiff Rosaura Building Corp. never had a lease agreement that was terminated or not renewed and as such there is no First Amendment recognized remedy for an independent contractor such as plaintiff. (Docket No. 53-2, p. 2).

As an independent contractor, the Highest Court in Board of County Commissioners, Wabaunsee Country v. Umbehr, 518 U.S. 668, 116 S.Ct. 2342 (1994) ruled that First Amendment protects from termination or prevention of automatic renewal of at-will government contracts in retaliation for their exercise of freedom of speech. However, the

Supreme Court noted that, at the time, it need not address the possibility of suits by bidders or applicants for new government contracts, such as would be herein plaintiff Rosaura Building Corp., which never had a contract with the Municipality of Mayaguez nor one had ever been signed. This is an uncontested issue of fact by admitted by both parties.[12]

In Prisma Zona Exploratoria de Puerto Rico v. Calderón, 310 F.3d 1 (1st Cir. 2002),[13] the Court of Appeals for the First Circuit referred to some protection to businesses that deal with the government.[14] It acknowledged, however, the area of contest appears to revolve around those who wish for the first time to bid for government contracts and recognized the Supreme Court had not spoken definitely and the other circuits were divided insofar as protection from those removed based on a prior business relationship or ongoing commercial relationship and those who for the first time attempted to have a contract with the government. Prisma, Zona Exploratoria, 310 F.3d at 7. At the time, the First Circuit decided not to dispose of the case on those issues for which it did not determine if the Elrod line would continue to expand.[15]

---

[12] Plaintiff referred to the Contract Petition insofar as having previously determined there were funds to grant the lease contract by the corresponding Head Start Program and the Municipality of Mayaguez. Once the petition was referred to the Legal Division of the Municipality, the contract as to plaintiff's property was never drafted nor executed by the parties.

[13] Prisma Zona negotiated an agreement with public corporations to operate a children's museum but failed to obtain a final commitment from the corporations before a general election in Puerto Rico resulted in a new government administration. The claim of political affiliation and resulting retaliation by new government administration in refusing to transfer funds resulted in a §1983 claim for First Amendment infringement.

[14] O'Hare Truck Serv., Inc. v. City of Northlake, 519 U.S. 712, 714-15, 116 S.Ct. 2353 (1996) (extending to independent contractors or regular provider of services the protection afforded to public employees against being discharged for refusing to support a political party or its candidates).

[15] Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673 (1976) (plaintiffs stated a valid claim for deprivation of constitutional rights because of retaliation due to political party affiliation).

On the other hand, it has been acknowledged that having executed a contract for professional services, its breach in failure to pay for the services of said independent contractor because of political relation, raised a colorable constitutional violation. <u>Ramírez v. Arlequin</u>, 447 F.3d 6 (1st Cir. 2006).

To the contrary, in <u>Remexcel Managerial Consultants, Inc. v. Arlequin</u>, 447 F.3d 19 (1st Cir. 2006), the First Circuit clarified the prior determination in <u>Ramírez.</u> The Court of Appeals held plaintiff pled adequate facts to state political discrimination for plaintiffs were entitled to payment for their professional services under contract and the municipality and its mayor had denied payment in retaliation for exercise of First Amendment associational rights.[16]

As such, in this Circuit it is still an open question whether First Amendment rights of government bidders and independent contractors having no prior business relationship with the government are acknowledged.

As to the case before this Magistrate Judge, it remains undisputed that plaintiff Rosaura Building Corp. held no pre-existing commercial relationship with the Municipality of Mayaguez and did not obtain the final approval for the lease of the property it claims was

---

[16] In <u>Ramírez,</u> emphasis was also placed in that <u>Prisma Zona</u> might have had different result if it had obtained a binding contract to operate the museum for the lack of a binding contract weakened the claim for protection from political discrimination. <u>Ramírez,</u> 447 F3d at 24.

not granted because of the alleged political discrimination within the factions of the same political party, the PDP and its antagonistic personal conflicts with then Mayor Rodríguez.[17] No contract was ever drafted nor signed.

Among the split decisions of other circuit courts in construing the Supreme Court note in Umbehr as to existence of a previous relationship requirement are McClintock v. Eichelberger, 169 F.3d 812 (3d Cir. 1999) which dismissed a First Amendment claim for plaintiff did not have sufficiently ongoing relationship to support a claim for refusing a bid on a new contract on alleged political retaliation). Still, in Heritage Constructor, Inc. v. City of Greenwood Ark., 545 F.3d 599 (8th Cir. 2008), a distinction with McClintock was recognized making such a precedent unhelpful because a previous relationship in Heritage had ended four years before the bid-like bidder.

On the other hand, Oscar Renda Contracting, Inc. v. City of Lubbock, Tex., 463 F.3d 378 (5th Cir. 2006) and Lucas v. Monroe County, 203 F.3d 964, 973 (6th Cir. 2000) recognized a First Amendment rights claim for first time bidders to government contracts, while African Trade & Information Center, Inc. v. Abromaitis, 294 F.3d 355 (2d Cir. 2002) acknowledged, in discussing Umbehr, the limited treatment on the issue has remained an open question in the circuit as to the lacking of a preexisting contractual relationship with the government for a First Amendment protection of an independent contractor.

---

[17] Plaintiff submits all necessary documentation was sent to the Legal Department of the Municipality to draft the contract once the Contract Petition was forwarded by Martínez-Olmeda, but no action was ever taken upon informing the contract would not proceed. (Docket Nos. 63, p. 6; 63-2, Exhibit 1, Ms. Falto's depo., pp. 25, 27-28 and 35; Exhibit 2, Ms. Martínez-Olmeda's depo., p. 19). As such, no draft of the contract was ever prepared, received or exchanged between the parties. The contract was never executed.

Meanwhile, in this district court, the recognition of a First Amendment right in Del Valle Group, was limited to issues raised at preliminary injunction and on a motion to dismiss wherein plaintiff was found to have successfully established a claim even if there had been no prior business relationship. Still, thereafter it granted qualified immunity to individual defendants for unsettled status of the question of law as to suits by bidders of government contracts. Del Valle Group v. Puerto Rico Ports Authority, 756 F.Supp.2d at 177-78.

Although this Magistrate Judge acknowledges the existence of the well founded district court decision in Del Valle determining entitlement of a contractor without a pre-existing relationship to plead a First Amendment claim and injunctive relief, opening such a path for a deluge of alleged politically discriminated complaints for not awarding contracts or bids to potential independent contractors and their expectations of government's deals cloaked with constitutional protection in a highly political atmosphere each four-election cycle is one better not followed at district level without a clearly limited path being established at a higher level in this circuit.[18]

Thus, upon absence of First Circuit Court precedent recognizing an independent contractor without prior business relationship to raise First Amendment claims, and the split among other circuits on the issue, this Magistrate Judge determines against creating a new cause of action and finds plaintiff Rosaura Building Corp. has failed to raise a claim

---

[18] Del Valle Group v. Puerto Rico Ports Authority, 756 F.Supp.2d 169 (D. Puerto Rico 2010).

upon which relief should be granted and, thus defendant's Motion for Summary Judgment is GRANTED. (Docket No. 53).

### D.     Pendent State Claims.

Pendent state claims in the Complaint refer to ordering the lease contract not be signed solely for political reasons in violation of plaintiff's right under the Constitution and Laws of the United States and Puerto Rico in its First Cause of Action, without any further discussion. (Docket No. 1, ¶ 34).[19]  *See* 28 U.S.C. §1367.  In the prayer of the Complaint, a generic reference is also made to the alleged pendent claims.  (*Id.*, ¶ 41 (e)).[20]

As a general principle, unfavorable disposition of federal claims will trigger dismissal, without prejudice, of any supplemental state-law claims.  United Mine Workers v. Gibbs,  383 U.S. 715, 86 S.Ct. 1130 (1966) (federal court holds discretion to exercise supplemental jurisdiction once federal claims have not survived); *cf.* Redondo Const. v. Izquierdo, 662 F.3d 42 (1st Cir. 2011) (given advanced stage of litigation it is an abuse of discretion to decline exercise of supplemental jurisdiction).

Still, upon absence of a federal claim of action, and a total lack of description which Puerto Rico laws would entitle plaintiff in this case to any relief which the Complaint submits as a mere reference to Constitution and laws of Puerto Rico, without more, this Court determines not to exercise supplemental jurisdiction as to unsubstantiated state pendent claims, if any were ever raised.

---

[19]  "By ordering that the lease contract not be signed solely for political reasons in clear violation of plaintiff's rights under the Constitution and Laws of the United States and Puerto Rico, plaintiff had a loss of earnings ..."

[20]  "e. Accept its pendent and ancillary jurisdiction over the parties and grant plaintiff all their rights under the Constitution and Laws of the Commonwealth of Puerto Rico."

## CONCLUSION

In view of the foregoing, defendant Municipality of Mayaguez' Motion for Judgment (Docket No. 52) is GRANTED IN PART AND DENIED IN PART. It is granted as to the Municipality of Mayaguez and denied as to Mayor Rodríguez in his official capacity.

In addition, co-defendant Mayor Rodríguez' summary judgment request, in his official capacity and in his personal capacity, is GRANTED. (Docket No. 53).

Accordingly, judgment to be entered dismissing all federal claims, with prejudice. As to the pendent state claims, if any at ¶¶ 34 and 41 of the Complaint, they are dismissed without prejudice.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 26th day of April of 2013.

s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE